1
2
3
4
5
6
7

8      UNITED STATES DISTRICT COURT

9      NORTHERN DISTRICT OF CALIFORNIA

10

11   CLYDE WYLIE, TRACY PEARSON and          No. C 06-07228 MHP
     JAMES BUTCHER, on behalf of themselves
     and all others similarly situated,
12
                                             **MEMORANDUM & ORDER**
13              Plaintiffs,
                                             **Re: Defendant Foss Maritime Company's**
                                             **Motion for Summary Judgment, or in the**
14       v.                                  **Alternative, Summary Adjudication of**
                                             **Claims**
     FOSS MARITIME COMPANY, a Washington
15   corporation and DOES 1 to 25 inclusive,

16              Defendants.
     _____/
17

18          Plaintiffs Clyde Wylie, Tracy Pearson and James Butcher ("plaintiffs") are current and

19   former employees of defendant Foss Maritime Company ("Foss").  On behalf of themselves and

20   others similarly situated, plaintiffs allege that Foss has violated California labor statutes by failing to

21   pay overtime wages and compensate plaintiffs for missed meal and rest breaks.  Now before the

22   court is Foss' motion for summary judgment arguing that federal law preempts California labor

23   regulation and that, in the alternative, it is exempt from California law by virtue of a collective

24   bargaining agreement.  Having considered the arguments and submissions of the parties, including

25   supplemental briefing requested by the court following oral argument, and for the reasons set forth

26   below, the court enters the following memorandum and order.

27

28

**United States District Court**
For the Northern District of California

BACKGROUND

Defendant Foss is a Washington corporation headquartered in Seattle.  Complaint ¶ 21.  It provides maritime transportation and logistical services throughout North America and the world.  Merritt Dec. ¶ 3.  In Northern California, Foss operates eight tugs, four petroleum barges, and two dredge barges.  Peottgen Dep., 26:6–16.  The petroleum barges are manned by one tankerman working alone.  Id. 34:3–6.  The dredge barges are manned by two levermen and two deck hand engineers.  Id.  Because the barges have no power of their own, tugs are used to move the barges from one location to another.  Wylie Dec. ¶ 7.  The tugs are generally manned by two deck officers, one engineer, and one or two deck hands.  Poettgen Dep., 32:8–22, 33:20–34:2.  None of the named plaintiffs work on Foss' dredge barges.  The only types of vessels at issue in this motion are petroleum barges and tugs.

Plaintiff Clyde Wylie ("Wylie") is a former Foss employee who worked as tankerman assigned to a petroleum barge from July 1999 until early 2005.  Wylie Dep., 83:10–25.  He was responsible for all tasks related to fueling (also referred to as "bunkering") the vessels of Foss's customers, Id. 119:4–10, and performed duties related to maintaining the barges to ensure their safe and efficient operation, with a particular focus on avoiding fuel spills, Merritt Dec. ¶ 8.  Wylie was a member of the Sailor's Union of the Pacific ("SUP") and worked for Foss under a collective bargaining agreement.  Wylie Dep., 74:10, 109:11–17.  Under the terms of the SUP collective bargaining agreement, Wylie was a scheduled tankerman who worked on duty seven days for 12 consecutive hours per day, followed by seven days off duty.  Broad Dec., Exh. 2, 2004-2008 SUP agreement, § 31.04; Broad Dec., Exh. 3, 2001-2004 SUP agreement, § 26.01.  Wylie was paid overtime for hours worked in excess of 12 hours during on duty days, as well as for any hour worked during off duty days.  2004-2008 SUP agreement, § 31.05.  Wylie's hourly rate of pay was $30 under the 2004-2008 collective bargaining agreement, and ranged between $23-$25 under the 2001-2004 agreement.  Id. § 36.01; 2001-2004 agreement § 37.01.  His overtime rate of pay under both SUP agreements was equal to one and one-half times the regular hourly rate.  2004-2008 SUP agreement § 36.02; 2001-2004 agreement § 37.02.

**United States District Court**
For the Northern District of California

1    Plaintiff Tracy Pearson ("Pearson") is a current Foss employee who, like Wylie, is a

2  tankerman working on a petroleum barge and is a union member subject to the provisions of the

3  SUP collective bargaining agreement.  Pearson Dep., 79:25–80:7.  Pearson began working for Foss

4  in January 2003 first as a flex tankerman and then as a casual tankerman.  Id. 79:25–80:7,

5  85:18–86:5.  In contrast to scheduled tankermen such as Wylie, flex tankermen are "seniority

6  employee[s] without a regular schedule whose start times (both daily and weekly) shall be flexible

7  for the purpose of relief of regularly scheduled personnel."  2004-2008 SUP agreement, § 32.01.

8  Flex tankermen are "called on an as needed basis, . . . but shall be guaranteed a minimum of fourteen

9  12-hour straight time days per month and 10 consecutive days off per month."  Id. § 32.02.  Flex

10  tankermen must be available for 15 straight time days in a month and all time worked over 15 days

11  in a calendar month is paid at the overtime rate.  Id. § 32.07.  Work during designated off days is

12  also paid at the overtime rate.  Id. § 32.02.  Casual tankermen are "dispatched when necessary" and

13  receive 8 hours of straight time pay.  Id. § 33.02.  Any hours worked in excess of 8 hours in a day is

14  considered overtime.  Id. § 33.02.  Both flex and casual tankermen were paid regular hourly and

15  overtime rates identical to the scheduled tankermen discussed above.

16    Plaintiff James Butcher is a current Foss employee who works as a deckhand engineer on

17  tugs that assist in moving barges.  Butcher Dep., 13:22–14:9, 18: 8–14.  Since he began his

18  employment with Foss in 1999, Butcher has always worked as a deckhand engineer on tugs.  Id.

19  Butcher is a member of the Inlandboatmen's Union ("IBU") and like Wylie and Pearson, his

20  employment with Foss is pursuant to a collective bargaining agreement.  Id.; Broad Dec., Exh. 4,

21  2004-2007 IBU agreement; Broad Dec., Exh. 5, 1999-2004 IBU agreement.  As a deckhand

22  engineer, Butcher performed janitorial duties such as keeping the storeroom, lockers, and vegetable

23  bins clean and organized and washing, cleaning, and mopping up the galley and messroom.  2004-

24  2007 IBU agreement § 40.02.  Under the terms of the IBU collective bargaining agreement, Butcher

25  worked 16 days on and 14 days off.  Butcher Dep., 23:17–24:4.  Beginning in January 2006, Butcher

26  was moved to the "call out list" and since then, his hours have varied depending on the volume of

27  available work.  Id. 23:8–10, 25:9–21.

28

**United States District Court**
For the Northern District of California

1    The tug boat crew Butcher works with is divided into two watches, each watch standing six

2    hours on duty followed by six hours off duty, for a total of 12 hours work in one day. Id. § 37.01.  If

3    a crew member works back-to-back watches, he receives overtime pay for each hour of the second

4    watch.  Id.  In addition, all time worked in excess of 12 hours during an on duty day is compensated

5    as overtime, as is each hour worked off watch or on the employee's scheduled days off.  Id. §§

6    37.02, 36.02, 36.03.  The 2004-2007 IBU agreement paid a single overtime rate of one and one-half

7    times the regular hourly rate.  Id.  The 1999-2004 IBU agreement paid two different over time

8    rates—"regular" overtime of 1.07 times the regular hourly rate for all hours worked between 8 and

9    12 hours in a day and 40 hours in a week, and "premium" overtime of 1.54 times the regular hourly

10   rate for all hours worked in a day over 12.  1999-2004 IBU agreement § 41.02.  The regular hourly

11   rate paid to deck hand engineers under the 2004-2007 IBU agreement was $20.81 and under the

12   1999-2004 IBU agreement the rate was $20.45.  2004-2007 IBU agreement § 42.01; 1999-2004 IBU

13   agreement § 41.02.

14   Under the SUP collective bargaining agreements governing the employment of plaintiffs

15   Wylie and Pearson, "one full undisturbed hour is allowed for each meal," and scheduled hours are

16   set aside for breakfast, dinner, and supper.  2004-2008 SUP agreement § 31.16.  Employees do not

17   always have the opportunity to take their meals during the work day, so when regularly scheduled

18   meals are not furnished, employees are paid an additional $16.50 for each regularly scheduled

19   workday.  Id. § 31.16, 27.05.  Under the SUP agreement, tankermen such as Wylie and Pearson who

20   "require rest to comply with the applicable federal or state work rule shall be afforded, if necessary,

21   a rest period during [work] times without penalty."  Id. § 31.02.

22   Under the IBU collective bargaining agreements governing the employment of plaintiff

23   Butcher, regular meal periods consisting of one hour each are provided for breakfast, lunch and

24   dinner.  2004-2007 IBU agreement § 40.01.  The IBU agreement is silent as to rest breaks.

25   Plaintiff Wylie attests that because he worked alone as the sole crew member on the barge,

26   he did not have time for an uninterrupted meal or rest break.  Wylie Dec. ¶ 8.  He generally brought

27   a sack lunch prepared at home or purchased meals from a retail store or fast food outlet on his way

28   to work, which he ate while working.  Id. ¶ 9.  To reimburse him for the cost of bringing his own

4

lunch, Wylie attests that Foss paid an allowance of about $16 per day, but in no event did Foss pay him his regular hourly rate on the days that he missed a meal break.  Id.  When a Foss tug boat was alongside his petroleum barge, Wylie never went onto a tug to eat a meal or take a rest break.  Id. ¶ 10.  Plaintiff Pearson, who also worked as a tankerman like Wylie, attests to the same facts regarding meal and rest breaks.

In contrast to Wylie and Pearson, plaintiff Butcher worked as a deck hand engineer on a tug boat and was not the sole crew member on his vessel.  Butcher testified that he had time to take meal and rest breaks between the various jobs he was required to perform on the tug.  Degooyer Dec., Exh. 4, Butcher Dep., 55:1–56:15.  He was able to take at least one rest break during his 6 hour shifts and occasionally took more.  Id.  These breaks would typically last 10-15 minutes.  Id. Moreover, Butcher testified that while working on the tug boats, he ate three meals a day.  Id.

Plaintiffs allege on behalf of themselves and those similarly situated that Foss has violated California Labor Code section 510 which requires overtime compensation.  Additionally, plaintiffs allege that Foss has violated California Labor Code sections 512 and 226.7, requiring an employer to provide meal and rest periods.  Plaintiffs do not assert claims based on Foss' breach of the collective bargaining agreement.  Indeed, the plaintiffs have each testified that, in accordance with the agreements, they were paid regular and overtime wages and that they either took meal and rest breaks as provided for in the agreement, or were paid an allowance in the event that meal and rest breaks were not taken.  Plaintiffs filed their complaint in state court, but defendants removed the action to this court asserting original federal jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. sections 1332(a) and 1332(d)(2).  Second Amended Complaint ¶ 8.

Now before the court is defendant's motion for summary judgment.  First, Foss contends that federal law preempts California laws regulating overtime compensation and meal and rest breaks.  Second, as an alternative to federal preemption of state overtime laws, Foss argues that it is exempt from California overtime requirements because plaintiffs worked pursuant to collective bargaining agreements.  Finally, as an alternative to federal preemption of state meal and rest break laws, Foss argues that there is no genuine dispute that plaintiffs in fact took necessary breaks in compliance with California law.

5

United States District Court

For the Northern District of California

1     Defendant's summary judgment motion is directed toward the named plaintiffs Wylie,

2  Pearson, and Butcher who are California residents hired by Foss in California to work on vessels in

3  the San Francisco Bay area.  Wylie Dec. ¶ 15; Pearson Dec. ¶ 13; Butcher Dec. ¶ 9.  Under the SUP

4  and IBU collective bargaining agreements, "San Francisco Bay area" is defined as "San Francisco

5  Bay, San Pablo Bay and All rivers and estuaries inside the line of demarcation."  2004-2008 SUP

6  agreement § 1.01; 2004-2007 IBU agreement § 2.01.  Plaintiffs seek to certify a class consisting of

7  "[a]ll persons who are employed or were formerly employed by Foss Maritime Company aboard

8  vessels owned and operated by Foss in the State of California at any time during the period August

9  5, 2002 until the entry of judgment."  Second Amended Complaint ¶ 3.  The class plaintiffs seek to

10  certify implicates factual circumstances broader than the facts presented to the court in connection

11  with this summary judgment motion.  As a result, the scope of the court's order pertains only to the

12  putative class members who are identical to the named plaintiffs with respect to their union status,

13  their geographic location, and the work that they perform pursuant to the SUP and IBU collective

14  bargaining agreements.

15

16  LEGAL STANDARD

17  I.     Summary Judgment

18     Summary judgment is proper when the pleadings, discovery and affidavits show that there is

19  "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

20  matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the

21  proceedings.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material

22  fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the

23  nonmoving party.  Id.  The party moving for summary judgment bears the burden of identifying

24  those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine

25  issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On an issue for which the

26  opposing party will have the burden of proof at trial, the moving party need only point out "that

27  there is an absence of evidence to support the nonmoving party's case."  Id.

28

United States District Court

For the Northern District of California

1    Once the moving party meets its initial burden, the nonmoving party must go beyond the

2    pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

3    genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving

4    party's allegations. Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th

5    Cir. 1994). The court may not make credibility determinations, Anderson, 477 U.S. at 249, and

6    inferences drawn from the facts must be viewed in the light most favorable to the party opposing the

7    motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991).

8

9    II.    California Labor Statutes and Regulatory Scheme

10          A.    Overtime Compensation

11    Section 510 of the California Labor Code sets forth default provisions governing what

12    constitutes overtime hours and what rate of pay will apply to various tiers of overtime work. In

13    relevant part, section 510(a) states,

14    Eight hours of labor constitutes a day's work. Any work in excess of eight hours in
      one workday and any work in excess of 40 hours in any one workweek . . . shall be
15    compensated at the rate of no less than one and one-half times the regular rate of pay
      for an employee. Any work in excess of 12 hours in one day shall be compensated at
16    the rate of no less than twice the regular rate of pay for an employee. . . . The
      requirements of this section do not apply to the payment of overtime compensation to
17    an employee working pursuant to any of the following:

18    (1) An alternative workweek schedule adopted pursuant to Section 511.

19    (2) An alternative workweek schedule adopted pursuant to a collective bargaining
      agreement pursuant to Section 514.
20

21    On its face, section 510(a) does not set limitations on the maximum number of hours an

22    employee may be required to work in a day or in a week.[1] It only requires that if an employee works

23    more than 8 hours in a day or 40 hours in a week, the employer must pay overtime at one and a half

24    times the regular hourly rate, and if an employee works more than 12 hours in a day, the employer

      must pay overtime at twice the regular hourly rate.
25

26    Sections 510(a)(1) and (2) provide two avenues by which an employee is exempt from the

27    requirements of section 510. First, under sections 510(a)(1) and 511, employees may adopt an

      alternative workweek schedule that allows for some flexibility in work hours without triggering
28    overtime pay. Section 511(a) provides that "upon the proposal of an employer" and with "approval

7

United States District Court
For the Northern District of California

in a secret ballot election by at least two-thirds of affected employees," employees may "adopt a regularly scheduled alternative workweek that authorizes work by the affected employees for no longer than 10 hours per day within a 40-hour workweek without the payment to affected employees of an overtime rate of compensation."  Like the default provisions in section 510, employees who have adopted an alternative workweek schedule under section 511 are not subject to any limitation on the maximum number of hours they may work.  Instead, section 511(b) provides that if the employee works in excess of the regularly scheduled hours established by the alternative workweek arrangement, the employee must be paid overtime wages.

Section 510(a)(2) and 514 provide a second avenue by which an employee is exempt from the default requirements of section 510.  Section 510(a)(2) states that the requirements of section 510 do not apply to employees working under an alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to section 514.  To qualify for the exemption in 510(a)(2), the collective bargaining agreement must meet certain requirements.  Under section 514, the collective bargaining agreement must "expressly provide[] for the wages, hours of work, and working conditions of the employees" and must "provide[] premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."  Compared to the exemption under section 511, the exemption under 514 allows employers and employees greater leeway in determining an alternative workweek schedule that does not trigger overtime pay.  Whereas section 511 caps an alternative workweek at "10 hours per day within a 40-hour workweek," section 514 does not have a parallel limitation. However, under both the 511 and 514 exemptions, the "alternative workweek schedule," as defined in section 500(c), must be a "*regularly* scheduled workweek" (emphasis added).

The current Labor Code section 500 *et seq.* is a codification of the "Eight-Hour-Day Restoration and Workplace Flexibility Act" passed by the California legislature in 1999.  Prior to 1999, California law required payment of overtime at time and a half for any hour worked in excess of 8 hours in a day or 40 hours in a week.  There was no requirement that hours worked in excess of 12 hours in a day be compensated at a rate of twice the regular hourly rate.  In 1998 the Industrial Welfare Commission, the state agency with authority to promulgate regulations implementing

8

California labor statutes, amended existing regulations to allow employees and employers in various industries to adopt mutually beneficial alternative workweek arrangements. These alternative arrangements allowed work in excess of 8 hours in a day or 40 hours in a week without triggering overtime pay. The purported purpose of the 1999 "Eight-Hour-Day Restoration and Workplace Flexibility Act" was to allow flexibility in workplace schedules, but in fact, restricted the ability of employers and employees to agree to alternative workplace arrangements without triggering overtime pay.

B.    Meal and Rest Periods

Section 512 of the California Labor Code governs the provision of meal periods. If an employee works more than 10 but less than 12 hours in a day, the employer must provide at least two meal periods of not less than 30 minutes each, and the employer and employee may agree to waive one of the two meal periods. Section 512 states,

> An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

Section 226.7 of the California Labor Code prohibits work during a meal or rest period, and requires an employer to compensate an employee for missed meal or rest periods. Section 226.7 states,

> (a) No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.
>
> (b) If an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided.

In accordance with section 226.7, the California Industrial Welfare Commission has issued wage orders governing meal and rest periods for the employees in this case. The wages orders are discussed more fully below.

United States District Court

For the Northern District of California

1    Although sections 510(a)(2) and 514 provide a collective bargaining exemption for overtime

2    compensation, there is no corresponding collective bargaining exemption for meal and rest periods.

3    When section 514 was initially codified following passage of the "Eight-Hour-Day Restoration and

4    Workplace Flexibility Act" in 1999, the text of section 514 stated "*[t]his chapter* does not apply to

5    an employee covered by a valid collective bargaining agreement . . . " (emphasis added).  Stats.

6    1999, c. 134 (A.B. 60), § 8.  This language appeared to create a collective bargaining exemption for

7    the entire chapter of the California Labor Code encompassing sections 500-558, including the meal

8    periods required under section 512.  Two years later, the California Legislature amended section 514

9    to read "*[s]ections 510 and 511* do not apply to an employee covered by a valid collective

10   bargaining agreement" (emphasis added).  Stats 2001, c. 148 (S.B. 1208), § 1.  In considering

11   section 514 and its history of amendment, the Ninth Circuit has concluded that "the right to meal

12   periods applies to signatories of collective bargaining agreements and constitutes a nonnegotiable

13   right under California state law."  Valles v. Ivy Hill Corp., 410 F.3d 1071, 1082 (9th Cir. 2005).

14

15

16       C.    Industrial Welfare Commission and Wage Orders

17       The Industrial Welfare Commission ("IWC") is the state agency empowered to formulate

18   regulations governing employment in California.  Tidewater Marine Western, Inc. v. Bradshaw, 14

19   Cal. 4th 557, 561 (1996).  IWC regulations are known as "wage orders" and are codified in the

20   California Code of Regulations.  Tidewater, 14 Cal. 4th at 561.  The Division of Labor Standards

21   Enforcement ("DLSE"), headed by the California Labor Commissioner, is the state agency

22   empowered to enforce California's labor laws, including IWC wage orders.  Id.

23       The wage orders at issue in this case are No. 9-2001 pertaining to employees in the

24   Transportation Industry, Cal. Code Regs., tit. 8, § 11090, and No. 4-2001 pertaining to Professional,

25   Technical, Clerical, Mechanical, and Similar Occupations, Id. § 11040. With respect to overtime

26   compensation requirements, both wage orders contain language mirroring that of Labor Code

27   sections 500(c), 510, and 514.  See Wage Order No. 9-2001 §§ 2(A), 3(A)(1), 3(H); Wage Order 4-

28   2001 No. §§ 2(A), 3(A)(1), 3(I).  With respect to meal breaks, both wages orders also contain

10

1  language mirroring that of Labor Code sections 512 and 226.7.  See Wage Order No. 9-2001 § 11;

2  Wage Order No. 4-2001 § 11.  With respect to rest breaks, both wage orders state:

> (A) Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period.  The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. . . . Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages.
>
> (B) If an employer fails to provide an employee a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.

9  Wage Order No. 9-2001 § 12; Wage Order No. 4-2001 § 12.

DISCUSSION

I.      Federal Preemption of State Regulation

The first question presented in this motion is whether federal law preempts California from applying its overtime compensation and meal and rest period laws to California resident employees working on tugs and petroleum barges in the San Francisco Bay area pursuant to collective bargaining agreements.  Foss argues that California regulation of overtime and meal and rest periods is preempted by: (1) the Shipping Act codified in title 46 of the United States Code; (2) the Fair Labor Standards Act of 1938, 29 U.S.C. sections 201 et seq. ("FLSA"); (3) general principles of federal maritime common law designed to promote uniformity of regulation for maritime commerce, U.S. v. Locke, 529 U.S. 89, 108 (2000); and (4) federal labor law as expressed in the National Labor Relations Act ("NLRA") and the Labor Management Relations Act ("LMRA").

Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or laws of any state to the Contrary notwithstanding."  "Consideration of the issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the states [are] not to be superseded by . . . Federal Act unless that [is]  the clear and manifest purpose of Congress."  Willamson v. General Dynamics Corp., 208 F.3d 1144, 1149 (9th Cir. 2000) (quoting Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992)).  In the Ninth Circuit, preemption analysis is based on the Supreme Court's three

United States District Court

For the Northern District of California

11

categories: (1) *express preemption*—where Congress explicitly defines the extent to which its enactments preempt state law; (2) *field preemption*—where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy; and (3) *conflict preemption*—where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Id.

Many of the preemption issues raised in this case have been squarely addressed by the Ninth Circuit in Pacific Merchant Shipping Association v. Aubry, 918 F.2d 1409 (9th Cir. 1990). That case involved maritime employees who like the plaintiffs in this case were California residents working on water vessels in the bays and harbors off the California coast. Id. at 1413–14. The maritime employees in Aubry filed administrative claims for overtime compensation pursuant to California wage law, and associations representing shipping employers filed a complaint for declaratory judgment that federal law—including the Shipping Act, the FLSA, and federal maritime common law—preempted application of California overtime provisions. Id. at 1414, 1415. The Ninth Circuit concluded that there was no preemption.

First, the Ninth Circuit rejected the contention that a manning provision of the Shipping Act preempted state overtime laws. This manning provision, 46 U.S.C. § 8104(b), limited workers on certain "oceangoing or coastwise vessel[s]" to shifts of no more than "9 of 24 hours when in port," or to shifts of no more than "12 of 24 hours at sea." Id. at 1416. The employers in Aubry argued that California's overtime pay laws requiring overtime pay for hours worked in excess of eight hours per day conflicted with federal law by creating a maximum workday below the 12-hour maximum established in 46 U.S.C. § 8104(b). Id. The Ninth Circuit disagreed with the employers in Aubry, noting that California overtime law required payment of a higher rate of wages after eight hours per day, but stopped short of setting a firm maximum on hours of work. Id. at 1416–17. Without setting a firm maximum on hours of work different from the hours permitted under 46 U.S.C. § 8104(b), the Ninth Circuit concluded that there was no preemption by the Shipping Act. Id.

The Ninth Circuit in Aubry then examined whether the FLSA preempted application of California's overtime provisions. Id. at 1417. The FLSA overtime provision requires payment of

overtime at 1.5 times the regular hourly rate for any hours worked in excess of 40 hours in a week. 29 U.S.C. § 207(a)(1). The FLSA exempts seamen from this overtime provision, defining "seaman" as someone who "performs . . . service which is rendered primarily as an aid in the operation of such vessel as a means of transportation." 29 U.S.C. § 213(b)(6). The Ninth Circuit in Aubry concluded that Congress' exclusion of certain classes of employees such as "seamen" from the FLSA overtime provisions was not an expression of Congressional intent to preclude application of state overtime provisions to FLSA-exempt employees. Id. at 1417–20. Moreover, the Ninth Circuit in Aubry held that even for FLSA *non-exempt* employees, there was no Congressional intent to preclude states from applying overtime laws that exceeded the standards set forth in the FLSA. Id. at 1420–27. The FLSA was merely a "national floor" that states were free to exceed. Id. at 1425.

The third and final issue considered by the Ninth Circuit in Aubry was whether a federal policy favoring uniformity and consistency in admiralty law was sufficient to preempt application of California's overtime provisions to maritime employees. Article III, Section 2 of the U.S. Constitution states that federal judicial power shall extend "to all cases of admiralty and maritime jurisdiction." The Supreme Court has interpreted this provision to restrict state authority to legislate maritime matters. Southern Pac. Co. v. Jensen, 244 U.S. 205, 216 (1917). Relying on Jensen and its progeny, the Ninth Circuit has opined that "the general rule on preemption in admiralty is that states may supplement federal admiralty law as applied to matters of local concern, so long as state law does not *actually conflict* with federal law or *interfere* with the *uniform working* of the maritime legal system." Aubry, 918 F.2d at 1422.

Balancing various federal and state interests, the Ninth Circuit concluded that application of California's overtime provisions to the maritime employees at issue in Aubry would not disrupt federal admiralty law. The state had a strong interest in the Aubry employees because the employees were involved in the clean-up of marine oil spills, a task of "critical importance to the state." Moreover, the employees were California residents and taxpayers who were interviewed and hired in California. At the same time, the federal government had a relatively weak interest in the Aubry employees because no evidence suggested that payment of overtime compensation to the employees—who worked exclusively on vessels operating off the California coast—would disrupt

13

1 international or interstate commerce.  On balance, the court determined that federal maritime law did

2 not preempt California overtime provisions.  Id. at 1425.

3      This case is on all fours with Aubry.  Accordingly, the court concludes that Shipping Act, the

4 FLSA, and federal admiralty law do not preclude application of California's overtime provisions to

5 the maritime employees in this case.  Defendant Foss' arguments to the contrary are misplaced.

6 With regard to the Shipping Act, defendant points to other provisions not specifically addressed by

7 the Ninth Circuit in Aubry.  These provisions include 46 U.S.C. § 8104(h), which limits work on

8 certain towing vessels to no more than 12 hours in a day, and 46 U.S.C. § 8104(f), which states that

9 a "master or other officer" generally has authority and may exercise his judgment to direct the work

10 and activities of a vessel's crew.  Assuming that these provisions apply to the employees in this case,

11 they do not assist defendants in finding preemption.  As the Ninth Circuit recognized in Aubry,

12 California law does not place a maximum on the number of work hours permitted in a day and

13 therefore, California law is not in conflict with 46 U.S.C. § 8104(h).  While California law may

14 require the payment of overtime wages, that requirement does not interfere with the authority of a

15 "master or other officer" to direct and control a crew aboard a vessel.  There is no conflict with 46

16 U.S.C. § 8104(f). Just as the Ninth Circuit concluded in Aubry that California overtime provisions

17 do not conflict with 46 U.S.C. § 8104(b), California law does not conflict with either 46 U.S.C. §

18 8104(h) or 46 U.S.C. § 8104(f).

19      With regard to preemption by the FLSA and federal concerns for admiralty law, defendant's

20 reliance on Fuller v. Golden Age Fisheries, 14 F.3d 1405 (9th Cir. 1994) is misplaced.  In Fuller, the

21 Ninth Circuit found Alaska's overtime compensation requirements to be preempted by federal law.

22 The employees in Fuller were fishermen engaged in coastwise voyages between two states,

23 Washington and Alaska.  The fishermen began and ended their voyages in Washington, did not

24 conduct the majority of their work in Alaska waters, and were not Alaska residents.  Moreover, the

25 Alaska Department of Labor submitted a letter to the court indicating that it did not exercise

26 jurisdiction over employees like the Fuller fishermen.  On these facts, the Fuller court distinguished

27 its case from the case presented in Aubry, finding that federal interests in uniform and consistent

28

**United States District Court**
For the Northern District of California

14

United States District Court

For the Northern District of California

1   maritime law prevailed where Alaska possessed at best a minimal interest in the employees.  Fuller,

2   14 F.3d at 1409.

3        The facts of the present case fall between the comparative extremes at issue in Aubry and

4   Fuller.  The current plaintiffs are not engaged in work of critical importance to the state—unlike the

5   oil spill clean-up workers in Aubry—but neither has the State of California affirmatively expressed a

6   belief that its jurisdiction does not apply—in contrast to the Alaska Department of Labor's letter in

7   Fuller.  On balance, this case appears more similar to the facts found in Aubry.  As in Aubry, the

8   present plaintiffs are California residents and taxpayers who perform virtually all of their work in

9   California waters.  See Aubry, 918 F.2d at 1425.  Granted, plaintiffs' vessels assist or supply *other*

10  vessels making voyages to and from other states and nations, but plaintiffs' *own* vessels do not make

11  voyages outside the San Francisco Bay Area, defined as "San Francisco Bay, San Pablo Bay, and All

12  rivers and estuaries inside the line of demarcation."  Plaintiffs are not engaged in work requiring

13  them to move from state to state or nation to nation and, therefore, the federal interest in regulating

14  interstate and international commerce is attenuated.  Cf. Fuller, 14 F.3d at 1409.  Because this case is

15  more like Aubry than Fuller, the court concludes that neither the FLSA nor federal admiralty law

16  precludes application of California overtime provisions to the maritime employees in this case.

17       Aubry addressed only federal preemption of California overtime provisions, so the question

18  remains whether federal law preempts California meal and rest break provisions.  By analogy,

19  however, the holding and reasoning of Aubry are persuasive and achieve the same results with

20  respect to the meal and rest break requirements.  Defendant Foss argues that the Shipping Act

21  comprehensively addresses working conditions on vessels, manning requirements, and rest periods.

22  This "field preemption" argument fails, however, because defendant cites to no case finding that the

23  Shipping Act is a comprehensive regulatory scheme.  In finding that state regulation of overtime

24  wages can coexist alongside provisions of the Shipping Act, the Ninth Circuit in Aubry implicitly

25  rejected a "field preemption" argument.  Moreover, there is no "conflict preemption."  Foss may

26  perceive the provision of regularly scheduled meal and rest breaks as economically undesirable

27  insofar as it may require the hiring of additional crew members (particularly in cases such as

28  plaintiff Wylie who works alone as the sole crew member on a petroleum barge).  This, however,

United States District Court

For the Northern District of California

1   does not amount to a conflict with the Shipping Act, the FLSA, or federal admiralty law in general.

2   In sum, the court concludes that application of California's meal and rest break requirements to the

3   maritime employees in this case is not preempted by the Shipping Act, the FLSA, or federal

4   admiralty law.

5        Although <u>Aubry</u> is dispositive of many of the preemption issues presented in this case, <u>Aubry</u>

6   did not have occasion to consider whether *federal labor law* preempts application of California

7   overtime and meal and rest break provisions.  Unlike the union employees in this case whose

8   employment is governed by a collective bargaining agreement, the employees in <u>Aubry</u> were non-

9   union employees working pursuant to individually-negotiated contracts.  See <u>Aubry</u>, 918 F. 2d at

10  1413, 1414.  Although <u>Aubry</u> is silent with respect to federal labor law preemption, the court is not

11  without guidance.

12       Preemption under "federal labor law" encompasses three distinct categories.  First,

13  preemption under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185,

14  provides an exception to the well-pleaded complaint rule.  Federal jurisdiction typically exists only

15  when a federal question is presented on the face of the plaintiffs' properly pleaded complaint.  In

16  cases brought to enforce a collective bargaining agreement or in cases where a resolution "is

17  substantially dependent upon analysis of the terms of a collective bargaining agreement," federal

18  labor law displaces a plaintiffs' state-law claim, no matter how carefully pleaded.  <u>Valles v. Ivy Hill</u>

19  <u>Corporation</u>, 410 F.3d 1071, 1075 (9th Cir. 2005).

20       LMRA section 301 preemption is not applicable here because interpretation of the collective

21  bargaining agreements is not necessary.  While "reference to" and "consideration of" the collective

22  bargaining agreement may be necessary to determine whether the contractual provision of wage

23  rates comports with California overtime statutes and regulations, "interpretation" of the agreement is

24  not necessary.  In other words, while overtime is provided in accordance with the agreement, there is

25  no dispute over the terms of the agreement or its interpretation.  As the Ninth Circuit reasoned in

26  <u>Gregory v. SCIE, LLC</u>, 317 F.3d 1050, 1053 (9th Cir. 2003), "[t]he issue here is not *how* overtime

27  rates are calculated but whether the *result* of the calculation complies with California law."

28

1   Accordingly, plaintiffs' claims are based on interpretation of state law, not of the collective

2   bargaining agreement.  Preemption under section 301 of the LMRA does not apply.

3          Moreover, the Ninth Circuit in <u>Valles v. Ivy Hill Corp.</u>, 410 F.3d 1071 (9th Cir. 2005), has

4   held that certain non-negotiable statutory rights, such as those provided under the California meal

5   and rest break statute, cannot be abridged by any collective bargaining agreement and therefore

6   preemption under LMRA section 301 cannot exist.  The Ninth Circuit stated in <u>Valles</u>,

7          The right to meal periods applies to signatories of collective bargaining agreements
           and constitutes a nonnegotiable right under California state law.  Because the
8          employees have based their meal period claim "on the protection afforded them by
           California state law, without any reference to expectations or duties created by
9          the[ir] collective bargaining agreement," . . . the claim is not subject to preemption.

10  <u>Id.</u> at 1082.[2]

11         Two additional preemption doctrines emerge from the National Labor Relations Act

12  ("NLRA"), 29 U.S.C. §§ 151 <i>et seq.</i>  Although the NLRA has no express preemption clause, the

13  Supreme Court has nevertheless articulated two preemption principles—the so-called "<u>Garmon</u>"

14  preemption doctrine based on <u>San Diego Bldg. Trades Council v. Garmon</u>, 359 U.S. 236 (1959), and

15  the "<u>Machinist</u>" preemption doctrine based on <u>Machinists v. Wisconsin Employment Relations</u>

16  <u>Comm'n</u>, 427 U.S. 132 (1976).  <u>See</u> <u>Associated Builders v. Nunn</u>, 356 F.3d 979, 987 (9th Cir. 2004).

17         <u>Garmon</u> preemption precludes "state interference with the National Labor Relations Board's

18  interpretation and active enforcement of the integrated scheme of regulation established by the

19  NLRA." <u>Nunn</u>, 356 F.3d at 987 (quotations and citations omitted).  Just as LMRA section 301

20  preemption is not at issue in this case, <u>Garmon</u> preemption issues are also not at issue.

21         The only federal labor law preemption issue left to consider is whether <u>Machinist</u> preemption

22  precludes application of California's overtime and meal and rest break requirements.  The court

23  answers this question in the negative.  <u>Machinist</u> preemption "prohibits states from imposing

24  restrictions on labor and management's weapons of self-help that were left unregulated in the NLRA

25  because Congress intended for tactical bargaining decisions and conduct to be controlled by the free

26  play of economic forces." <u>Id.</u> (citations and quotations omitted).  Preemption under the <u>Machinist</u>

27  doctrine is lenient enough to allow "a state to establish statewide minimum labor standards, even

28

though the standards would have the effect of dictating some terms of collective bargaining

agreements." McCollum v. Roberts, 17 F.3d 1219, 1221 (9th Cir. 1994).

In McCollum, the Ninth Circuit held that a state-law scheme by which non-union workers

were guaranteed rest breaks, but union employees were not, constituted "discrimination" against

union workers and was therefore inconsistent with the NLRA and preempted under the Machinist

doctrine.  At issue in McCollum was an Oregon labor law mandating that "[e]very employer shall

provide to each employee . . . an appropriate rest period."  McCollum, 17 F.3d at 1220.  A blanket

carve-out was provided for union employees.  The carve-out stated, "the provisions [requiring an

appropriate rest period] . . . do not apply to employees covered by a collective bargaining

agreement."  Id.  The Ninth Circuit recognized that "federal preemption law is, in a sense, pitted

against itself."  Id. at 1222.

> On the one hand, preemption principles compel a state to steer clear of regulation of
> unions, lest important NLRA rights be trampled.  On the other hand, if a state steers
> clear of unions while handing out benefits [to others], then it opens itself up to
> charges of anti-union discrimination, also a prohibited activity under the NLRA.

Id.  Acknowledging this tension, the Ninth Circuit concluded in McCollum that because "Oregon's

regulatory scheme discriminates against union workers and burdens the collective bargaining

process" for no "legitimate reason . . . other than an (incorrect) assumption that federal preemption

principles require it," the state scheme was "inconsistent with and therefore [] preempted by the

NLRA," Id. at 1223, 1222.

In Viceroy Gold Corp. v. Aubry, 75 F.3d 482 (9th Cir. 1995), the Ninth Circuit considered

whether California Labor Code § 750, setting a maximum workday of 8 hours for persons engaged

in mining and smelting, was preempted under the Machinist rule.  The California Labor Code

section at issue in Viceroy (§ 750) bears some semblance to the Labor Code section at issue in this

case (§ 510).  Foreshadowing the exception that the California Legislature would later carve out for

the overtime requirements of section 510, the California Legislature in 1983 carved out an exception

to the 8-hour workday of section 750.  The exception allowed more than 8-hour workdays for miners

and smelters covered by a collective bargaining agreement that "expressly provides for the wages,

hours of work, and working conditions of the employees."  Viceroy, 75 F.3d at 486 (quoting Cal.

Lab. Code § 750.5).

18

United States District Court
For the Northern District of California

1       In Viceroy, the Ninth Circuit reversed the district court, holding that there was no preemption

2   under the Machinist rule.  The Ninth Circuit had decided McCollum just one year earlier, and the

3   district court in Viceroy relied heavily on that case, see Viceroy Gold Corp. v. Aubry, 858 F. Supp.

4   1007, 1020–21 (N.D. Cal. July 21, 1994) (Walker, J.).  The Ninth Circuit in Viceroy, however, did

5   not cite or discuss McCollum.  Nevertheless, it is apparent that unlike the blanket union exception at

6   issue in McCollum in which *all* employees to a collective bargaining agreement were exempt from

7   rest break requirements, the union exception at issue in Viceroy was, as the Ninth Circuit observed,

8   a "familiar and narrowly drawn opt-out provision[]."  Viceroy, 75 F.3d at 489.  Under the exception

9   in California Labor Code § 750, only the subset of unionized mining and smelting employees whose

10  collective bargaining agreements expressly provided for wages, hours of work, and working

11  conditions were entitled to an exception from the 8-hour workday.  Because the opt-out provision in

12  Viceroy was "familiar and narrowly drawn," the state law was not preempted by the NLRA and the

13  Machinist rule.  Id. at 490.

14      This case is like Viceroy and unlike McCollum.  With respect to the overtime provisions,

15  California Labor Code section 510(a)(2) provides an exception for unionized employees and

16  therefore, arguably "discriminates" between union and non-union employees.  However, the opt-out

17  provision is "narrowly drawn."  To qualify for exemption from the overtime provisions of section

18  510(a), the unionized employees must (1) work an "alternative workweek schedule," as defined by

19  section 500(c) as "any regularly scheduled workweek requiring an employee to work more than

20  eight hours in a 24-hour period," and (2) as required under section 514, the collective bargaining

21  agreement must "expressly provide[] for the wages, hours of work, and working conditions of the

22  employees" and must also "provide[] premium wage rates for all overtime hours worked and a

23  regular hourly rate of pay for those employees of not less than 30 percent more than the state

24  minimum wage."  The opt-out provision in Labor Code section 510 applies only to the subset of

25  union employees whose collective bargaining agreements satisfy these various statutory

26  requirements.  It does not necessarily apply to *all* union employees.  The opt-out provision at issue

27  here is narrowly drawn and accordingly, just as there was no Machinist preemption in Viceroy, there

28  is no Machinist preemption here.

19

**United States District Court**
For the Northern District of California

1    With respect to <u>Machinist</u> preemption of the meal and rest break provisions, the analysis is

2  more straight-forward.  Unlike the overtime provisions of Labor Code section 510, the meal and rest

3  break provisions of Labor Code sections 512 and 226.7 apply equally to union and non-union

4  employees alike.  There is no separate opt-out for employees covered by a collective bargaining

5  agreement.  By setting minimum labor standards applicable to all employees statewide, Labor Code

6  sections 512 and 226.7 may dictate certain terms of collective bargaining agreements and may

7  interrupt the "free play of economic forces."  Nevertheless, this kind of state regulation falls

8  squarely within the type of regulation that the Supreme Court has long recognized as permissible

9  and not inconsistent with the NLRA.  <u>See e.g.</u>, <u>Metropolitan Life Ins. Co v. Massachusetts</u>, 471 U.S.

10  724, 747-58 (1985) (state law requiring general health insurance policies to include mental health

11  coverage not preempted by NLRA because law applied equally to union and nonunion employees);

12  <u>Fort Halifax Packing Co v. Coyne</u>, 482 U.S. 1, 19–23 (1987) (state law requiring employer to

13  provide one time severance payment to employees in the even of plant closing was not preempted by

14  NLRA).

15    In sum, the court concludes that application of California laws regulating overtime

16  compensation and meal and rest breaks to the employees in this case who are California residents

17  working on tugs and barges in the waters of the San Francisco Bay pursuant to collective bargaining

18  agreements, is not precluded by federal law, including the Shipping Act, the FLSA, general

19  principles of federal admiralty law, and federal labor law.  Defendant's summary judgment motion,

20  insofar as it relates to federal preemption issues, is **DENIED**.

21

22  II.    Exemption from California Overtime Laws

23    Having concluded that there is no federal preemption, the court turns to the next issue raised

24  by defendant's motion for summary judgment.  As an alternative to federal preemption of California

25  overtime compensation laws, Foss argues that summary judgment in its favor is appropriate because

26  it is exempt from the state law.  As Foss contends, because its employees work an alternative

27  workweek scheduled adopted pursuant to a collective bargaining agreement, California Labor Code

28  sections 510(a)(2) and 514 operate to exempt Foss from the default provisions set forth in section

20

United States District Court
For the Northern District of California

510.  Foss argues that as required under section 514, the collective bargaining agreement expressly provides for wages, hours, working conditions, premium wage rates for overtime, and a regular hourly rate that exceeds the state minimum wage by 30 percent.  Accordingly, Foss contends, the overtime requirements of section 510 do not apply and it is free to negotiate within the context of the collective bargaining agreement which hours within a day and within a week constitute overtime hours and what the overtime rate of pay will be.

Plaintiffs dispute this conclusion.  First, plaintiffs argue that the collective bargaining agreement does not set forth a valid "alternative workweek schedule" providing for regularly scheduled hours of work as required by sections 510(a)(2) and 500(c).  Second, plaintiffs argue that the scope of the exemption under section 514 is narrow—while it allows employers and employees to bargain over the *rates* at which overtime will be paid as well as the number of non-overtime hours worked *in a day*, it does not allow employers and employees to bargain over the number of non-overtime hours worked *in a week*.  In other words, attaching significance to the 40-hour workweek, plaintiff argues that a collective bargaining agreement can require work in excess of eight hours in a day without overtime pay, but cannot require work in excess of 40 hours in a week without overtime pay.  Under plaintiffs' interpretation of the statute, the schedule worked by tankermen such as Wylie requiring 12-hour days for seven days per week is impermissible because all 84 hours of the week are compensated at the straight-time rate.

Turning to the threshold issue of whether the collective bargaining agreements in this case satisfy the necessary prerequisites, the court must refer to the agreements to determine: (1) whether under section 510(2) they set forth an "alternative workweek schedule" defined in section 500(c) as "any regularly scheduled workweek"; and (2) whether under section 514 they provide for wages, hours of work, working conditions, premium wage rates for all overtime hours worked; and a regular hourly rate of pay not less than 30 percent more than California's minimum wage.  If the collective bargaining agreements satisfy these prerequisites, the court must then address the parties' dispute concerning the scope of the collective bargaining exemption.

Plaintiff does not dispute that most of these prerequisites are satisfied.  For example, under the 2004-2008 SUP collective bargaining agreement, plaintiff Wylie was paid $30 per hour as a

21

tankerman.  This hourly rate exceeds by more than 30 percent the California minimum wage which did not exceed $8.00 per hour between 2004 and 2008.  See Cal. Lab. Code § 1182.12 (2008).  Moreover, plaintiff concedes that the phrase "premium rate of overtime" is any rate that exceeds the regular hourly rate.  In other words, plaintiff agrees that the premium rate of overtime negotiated in a collective bargaining agreement can be greater than or less than the statutory rate of one and one-half times the hourly rate for hours in excess of 8 hours and twice the hourly rate for hours in excess of 12 in a day.  Accordingly, plaintiff does not dispute that the overtime rate of 1.07 times the hourly rate paid to employees such as plaintiff Butcher under the 1999-2004 IBU agreement satisfied the requirement of "premium" overtime rates.  Finally, plaintiff does not dispute that the collective bargaining agreements expressly provide for wages and working conditions.

Plaintiff does dispute whether the first prerequisite is satisfied, namely, whether the employees are working a bona fide "alternative workweek schedule" providing for a "*regularly scheduled workweek.*"  Plaintiff argues that this prerequisite is not satisfied because the collective bargaining agreements include on-call provisions and irregular weekly schedules.  Tankermen such as Wylie are assigned to work 12 hour days for seven days followed by seven days off.  In addition, tankermen are also "on call" during their days off and are subject to being called in for additional work.  Flex tankermen such as Pearson work only on an "on call" basis.  When called up, flex tankermen work approximately fourteen days, though not necessarily consecutively.  Other employees at Foss, including deck hand engineers such as Butcher are also subject to an "on call" schedule where Foss may call in employees to work as needed.

The parties dispute over whether plaintiffs' workweek schedules are bona fide "alternative workweek schedules" as required under the statute raises an issue of statutory interpretation.  The question is this: When it defined the phrase "alternative workweek schedule" in Labor Code section 500(c) as "any regularly scheduled workweek requiring an employee to work more than eight hours in a 24-hour period," did the California Legislature intend to include within the definition the type of "schedules" worked by the plaintiffs in this case?

Applying a common sense, plain-language approach to interpreting the definition set forth in section 500(c), the court concludes that the schedule worked by tankermen such as Wylie is a

"regularly scheduled workweek," but that schedules worked by flex tankermen such as Pearson and deck hand engineers such as Butcher are not "regularly scheduled workweeks." Tankermen such as Wylie have regular, predictable, and fixed schedules. They work 12-hour days for seven days per week, followed by seven days off. Although they are subject to being "on call" during their days off, their "on call" status does not make those hours that are regularly scheduled any less predictable. Flex tankerman and deck hand engineers work *only* on an "on call" basis. Common sense teaches that exclusive "on call" status equates to having no schedule at all. The court concludes that the collective bargaining agreements for tankermen satisfy the prerequisites for exemption under sections 510(a)(2) and 514, but that the collective bargaining agreements for flex tankermen and deck hand engineers do not.

Having concluded that at least with respect to plaintiffs such as Wylie whose collective bargaining agreements satisfy the statutory prerequisites to claim an exemption from the overtime requirements of section 510, the court now turns to the issue of the appropriate *scope* of the exemption. The court notes that both parties have cited to various portions of legislative history and administrative interpretive manuals to bolster their respective positions. The court does not find this material to be particularly illuminating or helpful in resolving the parties' dispute.

Ultimately, the question is one of legislative intent. In this case the court finds that the plain language used in the statute itself is the best indication of the California Legislature's intent. Labor Code section 510(a) states, "[t]he requirements of this section do not apply to the payment of overtime compensation to an employee working pursuant to" a collective bargaining agreement with features the court has already discussed above. Assuming a valid collective bargaining agreement, the natural reading of this provision is that *none* of the "requirements" set forth in "this section," meaning the preceding sentences of subparagraph (a), apply. Employees and employers are free to bargain over not only the *rate* of overtime pay, but also *when* overtime pay will begin. Moreover, employees and employers are free to bargain over not only the timing of when overtime pay begins *within a particular day*, but also the timing *within a given week*. The Legislature did not pick and choose which pieces of subparagraph (a) will apply or not apply. Instead, the Legislature made a categorical statement that "the requirements of this section," meaning this section *as a whole*, do not

1   apply to employees with valid collective bargaining agreements.  The court agrees with defendant's

2   interpretation of the scope of the collective bargaining exemption and rejects plaintiffs' more narrow

3   interpretation.

4           In sum, the court concludes that plaintiffs such as tankerman Wylie fall within the collective

5   bargaining exemption of section 510(a)(2) because they work pursuant to a bona fide "alternative

6   workweek schedule" and their collective bargaining agreements satisfy all the necessary statutory

7   requirements.  Therefore, the overtime compensation arrangements negotiated under the collective

8   bargaining agreement—specifying that straight-time is paid unless work exceeds 12 hours in a day

9   or 84 hours in a week—do not violate California law.  In contrast, plaintiffs such as flex tankerman

10  Pearson and deck hand engineer Butcher do not fall with the collective bargaining exemption of

11  section 510(a)(2) because as exclusively on-call employees, they do not work pursuant to bona fide

12  "alternative workweek schedules."  Accordingly, payment of overtime to these plaintiffs must be in

13  accordance with the default requirements set forth in section 510(a).  Defendant's summary

14  judgment motion, insofar as it concerns compliance with California overtime compensation laws, is

15  **GRANTED IN PART** and **DENIED IN PART**.

16

17  III.    Compliance with California Meal and Rest Break Law

18          As an alternative to federal preemption of California meal and rest break laws, defendant

19  Foss argues that it is entitled to summary judgment because it is in compliance with California law

20  requiring meal and rest breaks.  To be clear, the court understands that claims for violation of Labor

21  Code sections 512 and 226.7 are asserted by the Wylie and Pearson plaintiffs, but not the Butcher

22  plaintiff.  Butcher does not dispute that he was able to take meal and rest breaks in accordance with

23  California law.

24          Wylie and Pearson argue, however, that defendants are not entitled to summary judgment

25  with respect to their meal and rest break claims because as the sole crew member on their petroleum

26  barge, they did not have an opportunity to take uninterrupted meal or rest breaks.  Moreover, when

27  they were not able to take meal and rest breaks, they were paid an allowance of $16 per day.  This

28  allowance does not cure the violation, however, since Labor Code section 226.7(b) provides that

1  employees must be paid one hour's pay for each day on which they miss a meal or rest break.  The

2  hourly pay for both Wylie and Pearson exceeded the $16 allowance they were paid.  Defendant's

3  motion for summary judgment with respect to the claims of plaintiffs Wylie and Pearson for

4  violation of meal and rest break provisions is **DENIED**.

5

6  CONCLUSION

7       For the reasons stated above, defendant's motion for summary judgment is **DENIED IN**

8  **PART** and **GRANTED IN PART**.

9

10       **IT IS SO ORDERED.**

11

12  Dated: August 29, 2008                    _____

13                                            MARILYN HALL PATEL
                                              United States District Court Judge
14                                            Northern District of California

**United States District Court**
For the Northern District of California

ENDNOTES

1.      Under Labor Code section 500, "workday" and  "day" are defined as "any consecutive 24-hour period commencing at the same time each calendar day," and "workweek" and "week" are defined as "any seven consecutive days, starting with the same calendar day each week."

2.      In both <u>Gregory</u> and <u>Valles</u>, the result of the Ninth Circuit's holding was that, in the absence of a dispute involving interpretation of a collective bargaining agreement, the federal court lacked jurisdiction and the district court was directed to remand the action to state court.  <u>See</u> <u>Gregory</u>, 317 F.3d at 1054; <u>Valles</u>, 410 F.3d at 1082.  Unlike <u>Gregory</u> and <u>Valles</u>, remand is not compelled in this case because there exists an independent ground for the court's subject matter jurisdiction, namely the Class Action Fairness Act of 2005.  The Second Amended Complaint alleges that the matter in controversy exceeds the sum of $5,000,000 and the class includes at least one member who is a citizen of a state different from that of defendant.  <u>See</u> 28 U.S.C. § 1332(d)(2) and 1332(a).